UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES H. MURUNGI                          CIVIL ACTION

VERSUS                                    NO: 09-3109

TEXAS GUARANTEED                          SECTION: R(1)
SALLIE MAE


**<u>ORDER</u>**

Before the Court is Salle Mae's Motion to Dismiss pursuant to 12(b)(6), 12(b)(5), 9(b) and/or, Alternatively, Motion for a More Definite Statement pursuant to Rule 12(e), (R. Doc. 10), and Texas Guaranteed's Motion to Dismiss pursuant to Rule 12(b)(6) and Rule 9(b) and/or, Alternatively, Motion for a More Definite Statement pursuant to Rule 12(e), (R. Doc. 23). Defendants's motions are GRANTED in part and DENIED in part for the following reasons.

**I.    Background**

Murungi filed a reconventional demand against Sallie Mae and Texas Guaranteed in state court for alleged predatory lending

practices, including wage garnishment.  (*See* R. Doc. 1-3.)
Defendants removed the action to the Eastern District of
Louisiana on 20 March 2009.  (R. Doc. 1.)

Murungi alleges that through "corrupt and illegal
transactions defendants removed plaintiff's [student] loans from
deferment status to default status."  (R. Doc. 1-3.)  Once in
default, Murungi claims that defendants's agents: called his
place of employment everyday and disrupted his employer's work
flow, discussed his debt with third party co-workers, used false
and deceptive methods in order to gain access to his workplace
for the sole purpose of harassing and embarrassing him, left
threatening and harassing messages on his voice mail every
morning at night and on weekends, and spread falsehooda, thereby
damaging his professional and personal reputation.  (*Id.*)
Murungi has brought federal claims under the Higher Education Act
and its implementing regulations and the Federal Debt Collection
Practices Act, as well as state law claims for fraud, defamation
and intentional infliction of emotional distress (IIED).

Defendants have moved to dismiss all of Murungi's claims.
Both defendants argue that the Higher Education Act does not
create a private cause of action and that it preempts Murungi's
state law claims.  In addition, defendants argue that Murungi has
not pleaded fraud with particularity, and they challenge the

sufficiency of Murungi's complaint more generally under Federal Rule of Civil Procedure 12(e).  Finally, Sallie Mae argues that it is not a debt collector under the Federal Debt Collection Practices Act and moves to dismiss for insufficient service of process.

**II. Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, --- F.3d ----, No. 07-30106, 2009 WL 941505, at *2 (5th Cir. Apr. 9, 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

**III. Analysis**

*i.   Timeliness*

The Court briefly addresses the timeliness of Sallie Mae's motion.  Murungi argues that Sallie Mae's motion is time-barred because it was filed more than twenty days after this case was

removed from state court. Rule 12(b) motions must be filed before responsive pleadings. *See* Rule 12(b). This means that a 12(b) motion will ordinarily be filed within twenty days. *See* Rule 12(a)(1)(A)(I). In this case, however, the Court granted Sallie Mae a twenty-day extension to respond to Murungi's complaint. (R. Doc. 9.) Sallie Mae timely filed its 12(b)(6) Motion within that time and before filing its answer.

    *ii. No Private Cause of Action under the HEA*

Defendants first argue that the HEA does not create a private cause of action. The Court recently denied Murungi's Motion for Preliminary Injunction because the HEA does not create rights enforceable by private litigants. (*See* R. Doc. 26); *See also, e.g., Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Cliff v. Payco General American Credits, Inc.*, 363 F.3d 1113, 1123 (11th Cir. 2004); *St. Mary of the Plains College v. Higher Educ. Loan Program*, 724 F. Supp. 803, 806 (D.Kan. 1989). The Court incorporates its previous analysis here and grants defendants's motions to dismiss Murungi's HEA claims.

    *iii. Preemption*

Sallie Mae and Texas Guaranteed next argue that Murungi's state law claims for defamation, fraud and intentional infliction of emotional distress are preempted by the Higher Education Act

and its implementing regulations. When addressing a preemption claim, the Court assumes that the state's police powers are not superseded by federal law unless preemption is the clear and manifest purpose of Congress. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Congress can preempt state law in three ways. *Perry v. Mercedes Benz of N. Am., Inc.*, 957 F.2d 1257, 1261 (5th Cir. 1992) (citing *Guerra*, 479 U.S. at 280-81). Congress can do so expressly. *Id.* Further, Congress can preempt state law by enacting a comprehensive federal regulatory scheme that leaves no room for supplementary state regulation. *Id.* Finally, Congress preempts state law to the extent it actually conflicts with federal law. *Id.* A conflict occurs when compliance with both federal and state law is impossible or when the state law is an obstacle to the accomplishment of the objectives of Congress. *Id.*

Neither the HEA nor its related regulations expressly preempt state laws on fraud, IIED or defamation. Further, courts have concluded that the HEA does not occupy the field of higher education loans and loan repayment. *Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 596 (4th Cir. 2005); *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1125-26 (11th Cir. 2004); *Armstrong v. Accrediting Council for Continuing Educ. and Training, Inc.*, 168 F.3d 1362, 1369 (D.C. Cir. 1999); *Keams v. Tempe Tech. Inst.*,

5

*Inc.*, 39 F.3d 222, 225 (9th Cir. 1994). The Court is left to consider only whether Murungi's state law claims actually conflict with the HEA.

Sallie Mae and Texas Guaranteed argue that federal regulations governing "[l]ender due diligence in collecting guaranty agency loans," 34 C.F.R. § 682.411, preempt Murungi's claims. Section 682.411 sets forth the steps lenders must take when a debtor becomes delinquent on a federally backed loan. For example, after a borrower misses a payment, the lender must send at least one notice or collection letter within 15 days to notify the borrower of the delinquency and to urge the borrower to make payments. 34 C.F.R. § 682.411(c). If the borrower remains delinquent for 16-180 days, the lender must send four collection letters to the borrower and make four diligent efforts to contact the borrower by telephone. 34 C.F.R. § 682.411(d)(1). Between 181-270 days delinquency, the lender must "engage in efforts to urge the borrower to make the required payments on the loan." 34 C.F.R. § 682.411(e). After the 241st day of delinquency the lender must send a final demand letter and allow at least 30 days for the borrower to respond before filing a default claim. 34 C.F.R. § 682.411(f). The regulation states that its provisions "[p]reempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the

6

requirements or frustrate the purposes of this section." *Id.* at § 682.411(o)(1).

In a Statement of Interpretation, the Secretary of Education clarified the preemptive scope of these regulations:

> These provisions comprehensively regulate the pre-litigation informal collection activity on GSL obligations, by specifically requiring holders to complete a sequence of collection contacts with debtors. These provisions therefore preempt state law that would prohibit, restrict, or impose burdens on the completion of the sequence of contacts . . . . Moreover, because holders of GSLP loans commonly engage servicers and collection agencies to perform these dunning activities, this preemption includes any state law that would hinder or prohibit any activity taken by these third parties to complete these required steps.

55 Fed.Reg. 40120-01. The Secretary of Education stressed, however, that the preemptive effect of the regulations extends "no farther than is reasonably necessary to achieve an effective minimum standard of collection action." *Id.*

In *Brannan v. United Student Aid Funds, Inc.*, the Ninth Circuit read 34 C.F.R. § 682.411 and the Secretary's Notice of Interpretation expansively to preempt an Oregon unfair debt

7

collection statute. 94 F.3d 1260 (9th Cir. 1996). The court held that the HEA and its regulations preempt "*any* state law that would hinder or prohibit *any* activity taken by third-party debt collectors prior to litigation." *Id.* at 1266 (emphasis in original)(quotations and citations omitted); *See also Seals v. Nat'l Student Loan Prog.*, No. 5:02, 2004 WL 3314948 (N.D.W.Va Aug. 16, 2004). "Because the Oregon [statute] consist[ed] of nothing but prohibitions, restrictions and burdens on collection activity," the court found the statute preempted. *Brannan*, 94 F.3d at 1266.

Other courts have declined to find preemption in HEA cases. *See Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 596 (4th Cir. 2005); *Cliff*, 363 F.3d at 1125 (State law not preempted); *Armstrong v. Accrediting Council for Continuing Educ. and Training, Inc.*, 168 F.3d 1362, 1369 (D.C. Cir. 1999)(same); *Keams v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 225 (9th Cir. 1994)(same). In *Cliff v. Payco General American Creditors, Inc.*, for example, the Eleventh Circuit criticized *Brannan*'s broad preemption holding. The court noted that "the *Brannan* court did not engage in a provision-by-provision preemption analysis; instead, it viewed the [state] statute broadly, concluded that the statute consists entirely of restrictions and prohibitions on collection activity, and held that the entire statute is

8

preempted." *Cliff*, 363 F.3d at 1129. The *Cliff* court emphasized that "the Secretary's interpretation limits the preemptive reach of the regulations to only those state laws that would prohibit, restrict of impose burdens on the completion of the mandatory contacts prescribed by the regulations." *Id.* Since the defendant in *Cliff* did not "contend that the state law provisions at issue would prohibit, restrict, or impose a burden on the completion of these contacts," the court found preemption inapplicable. *Id.*

Similarly, in *College Loan Corp. v. SLM Corp.*, the Fourth Circuit held that the HEA did not preempt state law claims grounded in alleged violations of the HEA unless an actual conflict occurred. 396 F.3d 588, 599 (4th Cir. 2005). The court noted that "courts have generally authorized state tort claims to be pursued in areas where the federal government has regulated, even when such claims are in some manner premised on violations of federal statutes" and concluded that the "Secretary's exclusive authority to enforce the HEA and its regulations does not, standing alone, mandate the conclusion that a state law claim which relies on HEA violations for support 'obstructs' the federal scheme." *Id.* at 588-599.

Neither defendant has demonstrated an actual conflict in this case. Defendants assert broadly that "any potential state

law claims arising out of . . . pre-litigation activities to enforce, service, and/or collect on the consolidation loan are preempted." (R. Doc. 10-2, at 14.) This proves too much. As noted, neither express nor field preemption is implicated here, and conflict preemption does not cut such a wide swath. Sallie Mae and Texas Guaranteed have not explained how it would be impossible to comply with the HEA's wage garnishment authorization and federal collection requirements without violating Louisiana's fraud and defamation laws. Defendants do not contend that the HEA's regulations require them to make a misrepresentation, suppression, or omission with the intent to obtain an unjust advantage. *See Shelton v. Standard/700 Assocs.*, 798 So.2d 60, 64 (La. 2001)(listing elements of state law fraud claim). Nor do defendants argue that the HEA makes them utter false and defamatory statements. *Cyprien v. Bd. of Sup'rs ex rel. Univ. of La. Sys.*, 5 So.3d 862, 866 (La. 2009)(defamation). Defendants have not articulated how Louisiana's fraud and defamation laws create an obstacle to the purpose of the HEA.

As for Murungi's IIED claim, the Court acknowledges that any claim predicated on required contacts or a valid wage garnishment is preempted. Defendants, however, make no effort to demonstrate that they stayed within the bounds of the HEA and its regulations, and Murungi's allegations suggest otherwise. For

example, Murungi alleges that defendants "used false and deceptive methods in order to gain access to plaintiff's work place" and left "threatening and harassing messages on plaintiff's voice mail every morning and at night including Saturdays and Sundays." (R. Doc. 1.) This extreme behavior is certainly not mandated by the regulation's requirement to "engage in efforts to urge the borrower to make the required payments." 34 C.F.R. § 682.411. Defendants have simply not demonstrated, on the facts alleged, that Louisiana's IIED laws would interfere with the HEA's required contacts and wage garnishment procedures. *Cf. Cliff*, 363 F.3d at 1129 fn. 12 (distinguishing the Ninth Circuit's decision in *Brannan* because defendants did not show how the Florida law would "hinder the completion of the sequence of contacts" required by the HEA). The Court will dismiss these claims should defendants demonstrate that they merely complied with applicable federal regulations when they contacted defendant and garnished his wages. For now, defendants' Motion to Dismiss Murungi's state law claims on preemption grounds is DENIED.

   *iv. Rule 9(b) - Pleading Fraud with Particularity*

Although the Court does not find that Murungi's fraud claim is preempted by the HEA, the Court holds that Murungi has not met the heightened pleading requirements for fraud under Rule 9(b). "In alleging fraud or mistake, a party must state with

11

particularity the circumstances constituting fraud or mistake." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)(quoting Fed. R. Civ. P. 9(b)). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff [who pleads] fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (citations omitted). "Put simply, Rule 9(b) requires the complaint to set forth the who, what, where, and how of the events at issue." *Id.* (citations and quotes omitted).

The second sentence of Rule 9(b) "relaxes the particularity requirement for conditions of the mind such as scienter: 'Malice, intent, knowledge, and other conditions of the mind may be alleged generally." *Id.* (citations omitted). "Although Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy rule 9(b)." *Id.* (citations omitted). "The plaintiffs must allege *specific facts* supporting an inference of fraud." *Id.* (citations omitted)(emphasis in orginal).

Murungi's complaint alleges that defendants "have engaged in a sham cover up of unlawful predatory lending and consolidation to enrich themselves by engaging in fraudulent actions." (R. Doc. 1-3, at 3.) Further, Murungi claims that defendants "have

now entered into a 'SKIMMER' pattern" and have "used false and deceptive methods in order to gain access to plaintiff's work place for the sole purpose of harassing and embarrassing plaintiff." (*Id.* at 3-4.)  Each of these fraud allegations, if they indeed describe different incidents, fail to give the details required by Rule 9(b).  The Court cannot tell when or where these alleged events occurred.  Nor can the Court tell how defendants "gained access to plaintiff's work place" or even which defendant is alleged to have done so or what they said.  The Court grants plaintiff 20 days to amend his complaint to state his fraud claim with the specificity required by Rule 9(b).  Murungi must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey*, 540 F.3d at 339.  Otherwise, Murungi's fraud claim will be dismissed.

    *v.    Motion for a More Definite Statement*

    In addition to claiming that Murungi's complaint fails to comply with Rule 9(b), defendants challenge the sufficiency of Murungi's complaint more generally.  They assert "that plaintiff's Petition/Complaint is deficient in form and in content, because it does not define causes of action in separate and numbered counts, and is replete with mere conclusory

13

allegations of underlying facts to support same." A district court will grant a motion for a more definite statement under Rule 12(e) when the pleading at issue "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). Given the liberal pleading standard set forth in Rule 8(a), Rule 12(e) motions are disfavored. *See Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959); *Gibson v. Deep Delta Contractors, Inc.*, No. 97-3791, 2000 WL 28174, at *6 (E.D. La. Jan. 14, 2000). At the same time, the Supreme Court has noted that "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice," then a Rule 12(e) motion may be appropriate. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). The trial judge is given considerable discretion in deciding whether to grant a Rule 12(e) motion. *See Newcourt Leasing Corp. v. Regional Bio-Clinical Lab, Inc.*, No. 99-2626, 2000 WL 134700, at *1 (E.D. La. Feb. 1, 2000). Murungi's complaint is not a model of clarity, but it has given defendants enough information to file their answers and two extensive motions to dismiss. The motion for more definite statement is therefore denied.

    *vi. Federal Debt Collection Practices Act*

Sallie Mae argues that it is not a "debt collector" and

cannot be liable under the Federal Debt Collection Practices Act. The FDCPA seeks to eliminate "abusive, deceptive, and unfair debt collection practices" by regulating the type and number of contacts a "debt collector" can make with a debtor. *See* 15 U.S.C. § 1692; *Pelfrey v. Educ. Credit Manag. Corp.*, 71 F.Supp.2d 1161, 1165 (N.D. Ala. 1999). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" does not apply to "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* at § 1692a(6)(F).

It is clear from Murungi's complaint that Sallie Mae obtained his loan before the loan was put in default. Murungi states that he was making payments to Sallie Mae until he asked Sallie Mae to place his loan under deferment. (R. Doc. 1-3, at 3.) Murungi then asked Sallie Mae to lower his interest rate or allow him to refinance with another loan organization. (*Id.*) Only after Sallie Mae allegedly refused was Murungi's loan placed

into default. (*Id.*)("Through such corrupt and illegal transactions defendants removed plaintiff's loan from deferment status to default status."). Because Sallie Mae acquired Murungi's loan before it was placed in default, Sallie Mae is not a "debt collector" under the FDCPA. The Court therefore dismisses Murungi's FDCPA claims against Sallie Mae. *Brumberger v. Sallie Mae Servicing Corp.*, No. 02-2909, 2003 WL 1733548, at * 4 (E.D. La. Mar. 28, 2003), *aff'd*, 84 Fed.Appx. 458 (5th Cir. 2004) (dismissing FDCPA claims against Sallie Mae because it was not a "debt collector" under the act).

    *vii. Insufficient Service of Process*

Finally, Sallie Mae argues that Murungi's complaint should be dismissed for insufficient service of process. Murungi originally served Sallie Mae via Louisiana's long-arm statute in Reston, VA. Salle Mae asserts that Murungi was required to serve its designated agent for service of process in Louisiana.

The plaintiff has the burden to demonstrate valid service when an objection is made. *Carmini v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). Federal Rule of Civil Procedure 4(h)(1) gives two ways to serve corporations located within the United States. First, a plaintiff can serve the corporation in compliance with the state law where the district court is located or the state law where service is made.

*See* Fed. R. Civ. P. 4(h)(1). In Louisiana, personal service on the corporation's designated agent for service of process is required. *See* La. Code. Civ. Proc. art. 1261(A). If the corporation has not designated an agent, if there is no registered agent by reason of death, or if the person attempting to make service certifies that he is unable, after due diligence, to serve the designated agent, service may be made by personal service on any officer, director, or "employee of suitable age and discretion at any place where the business of the corporation is regularly conducted." *Id.* Second, Rule 4(h)(1)(B) allows service on the corporation by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process for the corporation. In addition, a defendant corporation can waive service under Rule 4(d).

In his response, Murungi states that he has now served Sallie Mae's designated agent in compliance with the Federal Rules of Civil Procedure. It is Murungi's burden to show effective service and nothing in the record reflects adequate service on Sallie Mae's agent. The Court therefore orders Murungi to provide the Court with a signed return of service within 20 days.

**III. Conclusion**

Defendants Motions to Dismiss are GRANTED in part and DENIED in part for the reasons stated above. Murungi is ORDERED to amend his complaint to plead fraud with particularity and provide the Court with a signed return of service on defendant Sallie Mae within 20 days from the date of this Order.

New Orleans, Louisiana, this __2nd__ day of July, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE