UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES H. MURUNGI                          CIVIL ACTION

VERSUS                                    NO: 09-3109

TEXAS GUARANTEED AND                      SECTION: R(1)
SALLIE MAE


## ORDER AND REASONS

Before the Court are Texas Guaranteed (Guaranteed)'s motion to dismiss (R. Doc. 60), motions for summary judgment (R. Docs. 62, 93), and motion to strike (R. Doc. 71). Also before the Court is Sallie Mae, Inc.'s motion for summary judgment. (R. Doc. 61.) For the following reasons, Guaranteed's motion to dismiss is GRANTED, Guaranteed's motions for summary judgment are GRANTED, and Guaranteed's motion to strike is DENIED. Sallie Mae's motion for summary judgment is GRANTED.


## I.    BACKGROUND

On August 10, 1994, plaintiff James H. Murungi obtained a consolidated loan from Sallie Mae under section 428C of the Higher Education Act of 1965 (HEA). (*See* R. Doc. 62-4); *see also* 20 U.S.C. § 1078-3. In a separate Lender Participation Agreement, Guaranteed promised to reimburse Sallie Mae for any losses arising from default on the loan. (*See* R. Docs. 62-4, 93-

3.)  Sallie Mae filed a claim for reimbursement with Guaranteed after Murungi defaulted on the loan, and Guaranteed paid the claim on July 8, 2008.  (*See* R. Docs. 62-4, 62-5.)  Sallie Mae then assigned Murungi's defaulted loan to Guaranteed, and Guaranteed began attempting to collect the loan by making telephone calls to Murungi and ultimately pursuing administrative wage garnishment proceedings.

On February 5, 2009, Murungi filed a *pro se* reconventional demand against Sallie Mae and Guaranteed.  The action was removed to this Court on March 20, 2009.  (R. Doc. 1.)  Murungi alleges that Sallie Mae and Guaranteed wrongfully characterized his loan as in default status, harassed him and his family through repeated collection calls, and imporperly initiated wage garnishment procedures.

In his original complaint, Murungi brought claims under the HEA, the Federal Debt Collection Practices Act (FDCPA), and state law claims for fraud, defamation and intentional infliction of emotional distress (IIED).  (*See* R. Doc. 1-3.)  Defendants moved to dismiss all of these claims.  (*See* R. Docs. 10, 23.)  On July 2, 2009, the Court dismissed Murungi's HEA claims against both defendants, dismissed his FDCPA claims against Sallie Mae, sustained his state law IIED and defamation claims, and granted him leave to plead his state law fraud claims with further

specificity. (*See* R. Doc. 30.) Murungi filed an amended complaint on September 3, 2009 (*see* R. Doc. 39) and a supplement to his amended complaint on September 10, 2009 (*see* R. Doc. 41). The Court treats both as a single amended complaint. On November 25, 2009, the Court granted Sallie Mae's motion to dismiss Murungi's amended fraud claims. (*See* R. Doc. 48.)

Guaranteed now moves to dismiss Murungi's amended fraud claims for failure to plead them with sufficient particularity. Guaranteed also moves for summary judgment on Murungi's fraud, defamation, IIEA and FDCPA claims. Sallie Mae moves for summary judgment on Murungi's defamation and IIEA claims.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Standard: Murungi's Fraud Claims

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "A court must accept all well-pleaded facts as true and must draw all

3

reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 149-50. Although *pro se* plaintiffs are held to less stringent standards than those drafted by lawyers, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). In addition to the requirements of Rule 8(a), a complaint that alleges fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff [who pleads] fraud to specify the statements contended

4

to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey*, 540 F.3d at 339 (citations omitted). "Put simply, Rule 9(b) requires the complaint to set forth the who, what, where, and how of the events at issue." *Id.* (citations and quotes omitted).

The second sentence of Rule 9(b) "relaxes the particularity requirement for conditions of the mind such as scienter: 'Malice, intent, knowledge, and other conditions of the mind may be alleged generally." *Id.* Although Rule 9(b) allows scienter to be averred generally, "simple allegations that defendants possess fraudulent intent will not satisfy rule 9(b)." *Id.* The plaintiff instead "must allege *specific facts* supporting an inference of fraud." *Id.* (emphasis in orginal). If facts are "peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief." *Id.* This relaxation of Rule 9(b), however, "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 2008).

**B.    Summary Judgment Standard: Murungi's Fraud, Defamation, IIEA and FDCPA Claims**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. V. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by

either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith for and on Behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

## III. DISCUSSION

### A. Fraud

Guranteed moves to dismiss, and in the alternative for summary judgment against, Murungi's fraud claims. In Louisiana, the elements of delictual fraud or intentional misrepresentation

are: (1) misrepresentation of a material fact; (b) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999); *Shelton v. Standard/700 Assocs.*, 798 So.2d 60, 64 (La. 2001) (Fraud is a "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."). Fraud "does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill." *Shelton*, 798 So.2d at 64; La. Civ. Code art. 1954.

1.  <u>Motion to dismiss</u>

Murungi alleges that defendants falsified loan records, but he offers no factual heft whatever in support of this allegation. Murungi does not identify even generally which records were allegedly falsified, which party falsified them, and when they were falsified. This conclusory allegation of fraud is insufficient to satisfy the particularity requirements of Rule 9(b).

Murungi alleges that defendants "knowingly and intentionally" did not follow the loan collection procedures

required by the HEA and its implementing regulations. *See* 34 C.F.R. § 682.411(b)-(f). To the extent this allegation is based on defendants' purported falsification of loan records, the Court has already found that it is not pleaded with sufficient particularity. To the extent Murungi simply claims that defendants failed to comply with federal regulations, this claim does not involve a "misrepresentation or a suppression of the truth" and therefore does not implicate fraud. *See Shelton*, 798 So.2d at 64. Although the Court finds nothing wrong *per se* with Murungi's attempt to recast his HEA (or FDCPA) claims as state law claims (*see* R. Doc. 30 at 8-11), state law fraud does not supply the appropriate cause of action in this instance.

Murungi alleges that defendants "intentionally and creatively failed to fully disclose, prepaid collection fees, finance charges, capitalization of the interest and other charges on plaintiff's loans." (*Id.* at 2.) He also alleges that defendants "failed to deliver accurate disclosure clearly and conspicuously in writing in a form that plaintiff may have used prior to the consummation, including without limitation failing to disclose fees, interests, repayment terms and options." (*Id.*) These bald allegations do not identify which fees, charges, interest rates, repayment terms and options should have been but were not disclosed. Nor do they identify who failed to disclose

9

them and when.  Murungi apparently concedes that he received at
least some information with respect to the terms of his loan (*see
id.* (alleging only that defendants failed to "fully" and "clearly
and conspicuously" disclose information)), and he does not
explain why these disclosures were deficient or why he could not
"use" them "prior to the consummation."  For each of these
reasons, the Court finds Murungi's allegations insufficient to
satisfy the requirements of Rule 9(b).

Murungi alleges that Sallie Mae's collection agents were
compensated with gift certificates for "their fabricated
'Resolving of Troubled Student Loans,'" a practice that caused
his debt to be "grown as large as possible."  (*Id.* at 3.)  This
allegation of fraud does not implicate Guaranteed, and it is also
speculative and without factual basis.  Murungi does not explain
*how* Sallie Mae's agents "fabricated" the resolution of troubled
student loans, nor does he allege how the resolution of *his* loan
was fabricated.  That defendants may have created incentives for
their employees to resolve troubled loans is not itself wrongful,
and Murungi alleges nothing more.  Accordingly, he has failed to
sufficiently allege fraud under Rule 9(b).

Murungi alleges that defendants fraudulently obtained his
work telephone number.  (*Id.* at 5.)  He asserts that he did not
provide his work number to defendants and therefore infers that

they must have obtained it through "deception and misrepresentation." (*Id.* at 5.)  That defendants were able to obtain Murungi's work number may be "merely consistent" with unlawful conduct, but it "stops short of the line between possibility and plausibility" because the information more likely was obtained through any number of channels not involving deception and misrepresentation.  *See Iqbal*, 129 S.Ct. at 1949; *see also* 34 C.F.R. § 682.411(h) (identifying various legitimate ways for lender to locate borrower, including contacting endorsers, relatives, references and schools).  Furthermore, even if Guaranteed did obtain Murungi's work information through some misrepresentation, Murungi still has failed to allege that he suffered injury as a result.  Although Guaranteed's ultimate *use* of Murungi's work number may have caused him injury, simply obtaining that information did not.  Accordingly, Murungi has not stated a Rule 9(b) claim of fraud.

The Court briefly addresses Murungi's various allegations of "widespread" and "systematically committed" fraud.  (*See, e.g.*, R. Doc. 41 at 1.)  To the extent they have not been addressed above, these general allegations are untethered to the facts of this case.  They do not suggest a specific intent to deceive Murungi, and they do not suggest detrimental reliance by Murungi. Instead, they are nothing more than speculation about wrongs

committed against other borrowers. Murungi does not have standing to bring their claims in this action. *See, e.g.*, *Prater v. Wackenhut Corrections Corp.*, 44 F. App'x 654, *1 (5th Cir. 2002) (finding that plaintiff "has no standing to assert a fraud claim when no misrepresentation was made to him or made with intention of reaching him and when he did not act upon any misrepresentation").

Murungi appears to cast his allegations of "widespread fraud" as claims under the False Claims Act (FCA). (*See* R. Doc. 39 at 1-2.) It appears that his allegations are based on "review and analysis of information obtained from numerous public sources, court records, media reports and investigations published in the chronicle of higher education." (R. Doc. 41 at 1.) The Court thus lacks jurisdiction over Murungi's FCA claims because they are "based upon publicly disclosed allegations or transactions." *See, e.g.*, *United States ex rel. Bain v. Georgia Gulf Corp.*, 208 F. App'x 280, 283 (5th Cir. 2006). The Court separately lacks jurisdiction over Murungi's FCA claims because he has failed to comply with any of the statutory prerequisites for filing a claim under the FCA. *See id.* For each of these reasons, Murungi's FCA claims must be dismissed.


    2.    Summary judgment

12

Murungi has failed to raise a genuine issue of material fact
as to whether defendants misrepresented the status of his loan.
On February 6, 2008, Sallie Mae sent Murungi an Economic Hardship
Deferment Request form.  Sallie Mae's cover letter expressly
states that "[u]ntil we approve your completed form, you are
responsible for making your regular monthly payments" and "we are
required by law to continue collection activities." (*See* R. Doc.
69-1.)  Murungi has submitted a signed deferment request dated
February 27, 2008, which he claims should have placed his loan
into deferment status.  (*See* R. Doc. 69-1.)  There is no
evidence, however, that defendants ever approved Murungi's
request.  Moreover, Sallie Mae's correspondence history indicates
that Sallie Mae sent Murungi the deferment request form on
February 6, 2008, but it does not indicate that Sallie Mae ever
approved the completed request.  (*Id.*)  Lastly, in a letter to
Guaranteed dated December 24, 2008, Murungi acknowledged that he
"never received any response indicating that the account is NOT
in deferment . . . ." (*See* R. Doc. 62-3.)  But as already
indicated, Murungi was informed that he was required to continue
making payments until his deferment request was approved, and
there is no evidence that it was.  For all of these reasons,
Murungi has failed to demonstrate a material issue of fact that
defendants misrepresented the status of his loan, and Guarantee's

motion for summary judgment must be GRANTED as to this claim.

**B.    Defamation**

Both Sallie Mae and Guaranteed move for summary judgment on
Murungi's state law defamation claims.  Under Louisiana law,
defamation is a tort involving the invasion of a person's
interest in his reputation and good name.  *Kennedy v. Sheriff of
East Baton Rouge*, 935 So.2d 669, 674 (La. 2006).  The four
elements of a defamation claim are: (1) a false and defamatory
statement concerning another; (2) an unprivileged publication to
a third party; (3) fault; and (4) injury.  *Id.*  A statement is
defamatory if it "tends to harm the reputation of another so as
to lower the person in the estimation of the community, deter
others from associating or dealing with the person, or otherwise
expose the person to contempt or ridicule."  *Id.*  A defamatory
statement may be classified as either defamatory *per se* or merely
"susceptible of a defamatory meaning."  A statement that accuses
another of criminal conduct, or that by its "very nature" tends
to injure one's personal or professional reputation, without
considering extrinsic facts or circumstances, is defamatory *per
se*.  *Id.* at 675.  If a plaintiff proves publication of words that
are defamatory *per se*, falsity, fault and injury are presumed,
and the burden of rebuttal shifts to the defendant.  *Id.*  If a

14

statement is not defamatory *per se*, the plaintiff bears the burden of proving falsity, fault and injury.

Murungi alleges that he was defamed on numerous occasions between September 2007 and December 2008 when Sallie Mae and Guaranteed made telephone calls to his workplace concerning the status of his defaulted student loans. (*See* R. Doc. 39 at 5-6.) Murungi asserts that these calls were screened by other employees at his office and thus ruined his professional reputation and caused him humiliation. The Court finds that these statements are not defamatory *per se* because defaulting on a student loan does not by its "very nature" impugn one's reputation or integrity. *See, e.g.*, *Makofsky v. Cunningham*, 576 F.2d 1223, 1236 (5th Cir. 1978) ("The mere assertion that a person has failed or refused to perform a contractual obligation does not, in and of itself, injure that person's business reputation or deprive him of public confidence . . . ."); *Morin v. Nationwide Fed. Credit Union*, Civ. A. No. 03-277, 2008 WL 5157740, at *5 (D. Conn. Dec. 8, 2008) (finding statements that plaintiff defaulted on loans "do not impugn Morin's professional integrity, and are not defamatory on their face"). A person might default on a loan for a variety of reasons, and whether the default "expose[s] the person to contempt or ridicule" will depend on "extrinsic facts or circumstances," such as why the default occurred. *Kennedy*,

935 So.2d at 674.  Because defendants' alleged statements are not defamatory *per se*, Murungi bears the burden of proving falsity, fault and injury.  At summary judgment, Murungi is obligated to demonstrate a genuine issue of material fact as to each of these three elements.

Murungi has not pointed to any evidence in the record suggesting that defendants made false statements to his coworkers.  Murungi asserts that defendants informed his coworkers that they "were calling regarding a debt [Murungi] owed" (R. Doc. 1-3 at 3) or "to discuss [Murungi's] loan default status" (R. Doc. 39 at 6).  Murungi does not dispute that he was in fact indebted to defendants, or that his loan was in default status.  Although Murungi may have preferred to keep his student loan status private, defendants' statements were not defamatory unless they were false.  Because the evidence indicates that defendants' statements were not false, Murungi has failed to create a genuine issue of material fact as to each element of his defamation claim, and defendants' motions for summary judgment must be GRANTED with respect to this claim.


**C.   IIED**

The elements of an IIED claim under Louisiana law are: (1) the conduct of the defendant was extreme and outrageous; (2) the

16

emotional distress suffered by the plaintiff was severe; (3) the defendant desired to inflict severe emotional distress and knew that severe emotional distress would be substantially certain to result from the conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). The defendant's "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* Liability for IIED does not arise from "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." The plaintiff's anguish must be "extreme" such that "no reasonable person could be expected to endure it." *Id.* Certain debt collection practices have been found to constitute extreme and outrageous conduct. *See Hairford v. Centurytel, Inc.*, 856 So.2d 139 (La. Ct. App. 2003). In *Hairford*, a telephone company accused an elderly widower of being married to the daughter of a family friend and then automatically debited $1,871.28 in 1-900 number charges from his bank account. *Id.* at 141-42. The telephone company ignored the putative debtors' assertions that the two were not married, threatened to discontinue his service, and chose not to conduct its own investigation. *Id.*

The Court first finds that Murungi has failed to demonstrate a genuine issue of material fact as to his IIED claim that

defendants improperly initiated wage garnishment proceedings.

Guaranteed is permitted to "initiate administrative wage

garnishment proceedings" under the HEA. *See* 20 U.S.C. §

1095a(a); 34 C.F.R. § 682.410(b)(6)(iii). Moreover, as already

discussed, there is no evidence that defendants ever approved

Murungi's deferment request, and indeed Murungi's own letter to

Guaranteed dated December 24, 2008 suggests the contrary. (*See*

R. Doc. 62-3.) Because there is no evidence that defendants

improperly characterized Murungi's loan status, defendants'

efforts to garnish his wages in accordance with federal

regulations was not extreme or outrageous conduct.

The Court next finds that Murungi has failed to create a

genuine issue of material fact as to his IIED claims based on

defendants' telephone calls. Murungi and his son assert in their

affidavits that they received a number of harassing and

embarrassing calls from defendants. (*See* R. Doc. 69-1.) Murungi

asserts that defendants telephoned him at his workplace, called

him irresponsible, and told him to stop whining about his

interest rate. (*Id.*) Although perhaps obnoxious, these actions

are not "so outrageous in character and extreme in degree as to

go beyond all possible bounds of decency." The Louisiana Supreme

Court has cautioned that "[p]ersons must necessarily be expected

to be hardened to a certain amount of . . . occasional acts that

are definitely inconsiderate and unkind," and this is all Murungi has alleged.

For the reasons stated, Murungi has failed to raise genuine issues of material fact as to his IIED claims, and defendants' motions for summary judgment are GRANTED with respect to these claims.

**D.    Debt Collection under the FDCPA and the HEA**

In some cases, debt collection practices prohibited by the FDCPA may be inconsistent with debt collection actions contemplated by the HEA.   In this case, Murungi asserts that Guaranteed violated the FDCPA when it made collection calls to his home and workplace and later garnished his wages.   Guaranteed asserts that it is not a debt collector subject to the FDCPA when it engages in collection activities as a fiduciary of the United States Department of Education (DOE).

1.    <u>The FDCPA</u>

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt

collection abuses." 15 U.S.C. § 1692(e). The FDCPA defines a "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1962a(6). A debt collector does not include, however, "any person collecting or attempting to collect any debt . . . to the extent such activity . . . is incidental to a *bona fide* fiduciary obligation . . . ." 15 U.S.C. § 1962a(6)(F)(i).

Under the FDCPA, a debt collector is prohibited from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). A debt collector also may not contact a consumer at "a time or place known or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c(a)(1). The FDCPA does not provide for the prejudgment garnishment of earnings, *see* 28 U.S.C. § 3104(a), (b)(1)(A); *compare* 28 U.S.C. § 3205(a) (permitting postjudgment garnishment of disposable earnings), and a debt collector may not communicate with third parties in connection with the collection of a debt, except with the consumer's consent, a court's permission, or "as reasonably necessary to effectuate a *postjudgment* judicial remedy." 15 U.S.C. § 1692c(b) (emphasis added).

20

2.    <u>Guaranteed is not a debt collector</u>

The Court concludes that Guaranteed is not a "debt collector" subject to the FDCPA because it its actions to collect Murungi's defaulted loan were "incidental" to its *bona fide* fiduciary obligation" to the United States government.  15 U.S.C. § 1962a(6)(F)(i).  Guaranteed's fiduciary relationship to DOE is created by detailed federal regulations governing Guaranteed's participation in the Federal Family Education Loan Program (FFELP).  Moreover, debt collection is merely incidental to Guaranteed's primary function of guaranteeing student loans made by other entities.

The HEA was enacted to make the "benefits of postsecondary education" available to "youths with financial or cultural need." 20 U.S.C. § 1070(a).  To this end, the HEA established, *inter alia*, the FFELP administered by DOE.  Under the FFELP, "eligible lenders make guaranteed loans on favorable terms to students or parents to help finance student education.  The loans are guaranteed by state or private guaranty agencies" and ultimately subsidized and reinsured by DOE.  *Pelfrey v. Educ. Credit Mgmt. Corp.*, 71 F. Supp. 2d 1161, 1162-63 (N.D. Ala. 1999).  A guarantee agency "in essence is an intermediary between the United States and the lender of the student loan.  The United States is the loan guarantor of last resort." *Great Lakes Higher*

*Educ. Corp. v. Cavazos*, 911 F.2d 10, 15 (7th Cir. 1990). The
parties do not dispute that Murungi's consolidated loan is a
qualifying FFELP loan.

DOE has promulgated detailed regulations implementing the
FFELP and governing the actions of guaranty agencies. *See* 20
U.S.C. § 1082(a)(1). The regulations define a "guaranty agency"
as "[a] State or private nonprofit organization that has an
agreement with the Secretary under which it will administer a
loan guarantee program under the [Higher Education] Act." 34
C.F.R. § 682.200(b). The parties do not dispute that Guaranteed
is a guarantee agency subject to HEA regulations. *See* Tex. Educ.
Code §§ 57.11, 57.41 (creating Guaranteed to, *inter alia*,
guarantee loans as provided by the FFELP). If a borrower
defaults on a qualified student loan, the lender (*i.e.*, Sallie
Mae) typically must satisfy certain due diligence collection
requirements before filing a default claim with its guarantee
agency (*i.e.*, Guaranteed). *See* 34 C.F.R. §§ 682.206, 682.208,
682.411. Once the guarantee agency pays the lender's default
claim, the guarantee agency is then assigned the defaulted loan
and charged with attempting to collect the balance directly from
the borrower. *See* 20 U.S.C. §§ 1078(c)(2)(A), 1080a(c)(4). If
the guarantee agency complies with certain regulatory collection
requirements, DOE reimburses the guarantee agency for some or all

22

of its losses. *See* 20 U.S.C. § 1078(c)(1); 34 C.F.R. §§ 682.404, 682.406(a)(11), (14). The defaulted loan and any amounts collected by the guarantee agency become part of the guarantee agency's "reserve fund" and thus "property of the United States." 20 U.S.C. §§ 1072(g)(1), 1072a(a)-(c), (e); 34 C.F.R. §§ 682.410(a)(1), (7), 682.419(b)(3). The DOE has authority to regulate the reserve fund and order the guarantee agency to transfer some or all of its reserve funds to the government or another guarantor. 20 U.S.C. §§ 1072(g)(1)(A)-(C), 1078(c)(8), 1082; 34 C.F.R. §§ 682.409, 682.410, 682.417.

A guarantee agency has a continuing obligation to pursue collection activities even after receiving reimbursement from DOE. 34 C.F.R. § 682.410(b)(6). These actions include sending dunning letters, making telephone contacts, reporting defaults to credit bureaus, offsetting income tax refunds, pursuing administrative wage garnishment, and in some cases instituting civil litigation. *See* 20 U.S.C. § 1095a(a); 34 C.F.R. § 682.410(b)(5)-(6). DOE may take remedial actions against a guarantee agency that does not comply with HEA regulations. *See* 34 C.F.R. § 682.413(b).

HEA regulations expressly characterize the relationship between a guaranty agency and the DOE as a fiduciary relationship. *See* 34 C.F.R. § 682.419(a) (providing that the

reserve funds are property of the United States, and the "guaranty agency must exercise the level of care required of a fiduciary charged with the duty of protecting, investing, and administering the money of others."); 34 C.F.R. § 682.410(a)(11)(iii) (providing that guaranty agency is "the fiduciary under its agreements with the Secretary"); 34 C.F.R. § 682.410(a)(5) ("The guaranty agency shall exercise the level of care required of a fiduciary charged with the duty of investing the money of others when it invests the assets of the reserve fund[.]").  The Secretary of Education has also stated that guaranty agencies owe a fiduciary duty to DOE.  *See* Fed. Family Educ. Loan Program, 61 Fed. Reg. 49,382, 49,382 (Sept. 19, 1996) ("[A] guaranty agency is responsible for acting as a fiduciary responsive for protecting the interests of the Department and taxpayers in the reserve funds.").  Accordingly, every court to have considered the issue has concluded that a guaranty agency acts as a fiduciary of DOE when it administers the FFELP.  *See, e.g.*, *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1035 (9th Cir. 2009) (If a guarantee agency "guaranteed the loan to [plaintiff], and had then undertaken to collect on the loan after default, its collection activities would have been 'incidental to' its fiduciary duties to the DOE within the meaning of the FDCPA."); *Pelfrey*, 71 F. Supp. 2d at 1180 ("Having exempted . . .

guaranty agencies from liability under the FDCPA, it is up to Congress to address any abuses which may result from the collection activities of fiduciaries."); *Davis v. United Student Aid Funds, Inc.*, 45 F. Supp. 2d 1104, 1109 (D. Kan. 1998); *Montgomery v. Educ. Credit Mgmt. Corp.*, 238 B.R. 806, 810 (D. Minn. 1999); *Kirk v. Educ. Fund*, Civ. A. No. 06-4205, 2007 WL 2226046, at * 4 (Aug. 1, 2007).

This Court similarly concludes that Guaranteed acts as a fiduciary of DOE when it operates pursuant to the FFELP, and therefore is not a debt collector subject to the FDCPA in this case. *See* 15 U.S.C. § 1962a(6)(F)(i). The detailed HEA regulations governing Guaranteed's participation in the FFELP – and particularly its management of reserve funds – require Guaranteed to exercise a high degree of care in the interest of DOE. This is the *sine qua non* of a fiduciary relationship. *See* Blacks Law Dictionary (8th ed. 2004) (fiduciary: "A person who is required to act for the benefit of another person on all matters within the scope of their relationship . . . ."; "One who must exercise a high standard of care in managing another's money or property."). Moreover, Guaranteed's debt collection activities are merely "incidental" and not "central to" this fiduciary relationship. *See Rowe*, 559 F.3d at 1034; *see also FTC Official Staff Commentary on the Fair Debt Collection Practices Act*, 53

Fed. Reg. 50097, 50103 (Dec. 13, 1988) (stating that *bona fide*
fiduciary exception applies to entities such as trust departments
of banks and escrow companies, but not party named as debtor's
trustee solely for purpose of conducting foreclosure sale).
Guaranteed's central function in the FFELP is to guarantee
student loans made by other entities and manage funds on behalf
of the government.  In most cases, student borrowers will not
default, and Guaranteed will not be called on to engage in any
debt collection activities.  When Guaranteed is occasionally
required to engage in collection activities, these activities are
only secondary to its primary purpose of facilitating guaranteed
loans on favorable terms in order to make the "benefits of
postsecondary education" available to "youths with financial or
cultural need."  20 U.S.C. § 1070(a); *see also Pelfrey*, 71 F.
Supp. 2d at 1162-63.

    For the reasons stated, Murungi has failed to raise genuine
issues of material fact that Guaranteed is a debt collector
subject to the FDCPA, and Guaranteed's motion for summary
judgment is GRANTED with respect to Murungi's FDCPA claims.


**D.   Guaranteed's Motion to Strike**

    Guaranteed moves to strike Murungi's opposition to its
motion for summary judgment as untimely.  Guaranteed has not

alleged any prejudice from the short delay, nor could it.[1]  *See*

*Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995)

("Under Fed. R. Civ. P. 6(b), the district court is granted broad

discretion to expand filing deadlines.")  Accordingly,

Guaranteed's motion to strike is DENIED.


**IV.   CONCLUSION**

For the reasons stated, Guaranteed's motion to dismiss is

GRANTED, Guaranteed's motions for summary judgment are GRANTED,

and Guaranteed's motion to strike is DENIED.  Sallie Mae's motion

for summary judgment is GRANTED.



New Orleans, Louisiana, this 18th day of February, 2010.


_____
              SARAH S. VANCE
        UNITED STATES DISTRICT JUDGE



---

[1] The Court recently determined that Guaranteed's motion to
dismiss was properly before the Court although it was filed two
days after an extended deadline.  (*See* R. Doc. 63 at 3.)